**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFERY AGONATH, JAMES ALLEN, BRIAN DALEY, KEVIN ROGERS and MICHAEL GALARZA, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) |
| Plaintiffs, | ) Civil Action No. |
| v. | ) ) |
| INTERSTATE HOME LOANS CENTER, INC., TERENCE CULLEN, ALEX NIVEN, KENNETH TUMSUDEN, JEANNE WICKES, and ELLEN ZUCKERMAN, | ) ) ) ) ) ) |
| Defendants. | ) |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs, Jeffery Agonath, James Allen, Brian Daley, Kevin Rogers and Michael Galarza, individually and on behalf of all others similarly situated ("Named Plaintiffs"), by and through their undersigned counsel, as and for their Class and Collective Action Complaint against Defendants, Interstate Home Loans Center, Inc., Terence Cullen, Alex Niven, Kenneth Tumsuden, Jeanne Wickes, and Ellen Zuckerman ("Defendants") allege as follows:

## JURISDICTION AND VENUE

1.      Named Plaintiffs bring this action under the Fair Labor Standards Act (hereinafter the "FLSA"), 29 U.S.C. §§ 201 et seq., the New York Labor Articles 6 and 19, the New York Codes, Rules, and Regulations 142-2.2 (hereinafter the "NYLL"), and the Illinois Minimum Wage Law, 820 ILCS § 105 *et seq.* (hereinafter the "IMWL") to recover unpaid earned overtime compensation and for other relief. This action is brought as a collective action pursuant to 29 U.S.C. § 216(b) and as a New York state-law class action under Fed. R. Civ. P. 23(b)(3). Plaintiffs,

1

Jeffery Agonath, James Allen, Brian Daley and Kevin Rogers also bring individual claims under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1, *et seq*. ("IMWL"), the Illinois Wage Payment and Collection Act, 820 ILCS 115, *et seq*. ("IWPCA") and Illinois common law for breach of contract and retaliatory discharge.

2.      Jurisdiction over Named Plaintiffs' FLSA claims is based upon Section 216(b) of the FLSA, 29 U.S.C. § 216(b), and upon 28 U.S.C. § 1331.

3.      The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because these claims are so related to the FLSA claims that they form part of the same case or controversy.

4.      Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

## PARTIES

5.      Plaintiff Jeff Agonath ("Agonath") is a resident of DuPage County, Illinois. Agonath was employed by Defendants as a loan officer in Illinois from on or about April 14, 2017 to July 21, 2017. At all relevant times, Agonath was an "employee" as defined by the FLSA, 29 U.S.C. § 203, the IMWL, 820 ILCS 105/3(d) and the IWPCA, 820 ILCS 115/2.  Pursuant to 29 U.S.C. §216(b) of the FLSA, Agonath's written consent to become a party plaintiff is attached hereto as Exhibit "A."

6.      Plaintiff James Allen ("Allen") is a resident of Kane County, Illinois.  Allen was employed by Defendants as a loan officer in Illinois from on or about April 14, 2017 to July 21, 2017. At all relevant times, Allen was an "employee" as defined by the FLSA, 29 U.S.C. § 203, the IMWL, 820 ILCS 105/3(d) and the IWPCA, 820 ILCS 115/2.  Pursuant to 29 U.S.C. §216(b) of the FLSA, Allen's written consent to become a party plaintiff is attached hereto as Exhibit "B."

2

7.      Plaintiff Brian Daley ("Daley") is a resident of Kane County, Illinois.  Daley was employed by Defendants as a loan officer in Illinois from on or about May 22, 2017 to July 21, 2017. At all relevant times, Daley was an "employee" as defined by the FLSA, 29 U.S.C. § 203, the IMWL, 820 ILCS 105/3(d) and the IWPCA, 820 ILCS 115/2.  Pursuant to 29 U.S.C. §216(b) of the FLSA, Daley's written consent to become a party plaintiff is attached hereto as Exhibit "C."

8.      Plaintiff Kevin Rogers ("Rogers") is a resident of McHenry County, Illinois. Rogers was employed by Defendants as a loan officer in Illinois from on or about April 17, 2017 to June 17, 2017. At all relevant times, Rogers was an "employee" as defined by the FLSA, 29 U.S.C. § 203, the IMWL, 820 ILCS 105/3(d) and the IWPCA, 820 ILCS 115/2.  Pursuant to 29 U.S.C. §216(b) of the FLSA, Rogers's written consent to become a party plaintiff is attached hereto as Exhibit "D."

9.      Plaintiff Michael Galarza ("Galarza") is a resident of Hauppauge, New York. He was employed by Defendants as a loan officer at Defendants' office located at 25 Melville Park Road, Suite 105, Melville, New York from on or about November 1, 2013 to November 30, 2014. At all relevant times, Galarza was an "employee" as defined by the FLSA, 29 U.S.C. § 203 and New York Wage and Hour Law.  Pursuant to 29 U.S.C. §216(b) of the FLSA, Galarza's written consent to become a party plaintiff is attached hereto as Exhibit "E."

10.     Defendant Interstate Home Loans Center, Inc. ("IHLC") is a New York corporation with locations in various regions throughout the United States, including its corporate headquarters located at 40 Marcus Drive, Melville, New York 11747.

11.     At all relevant times, Defendant Alex Niven ("Niven") was the President and Chief Executive Officer of IHLC. At all times relevant, Niven exercised operational control over IHLC, controlled significant business functions of IHLC, determined employee salaries, made hiring

3

decisions, and acted on behalf of and in the interest of IHLC in devising, directing, implementing, and supervising the wage and hour practices and policies relating to the employees. As such, at all relevant times, Niven was an "employer" as defined by the FLSA, 29 U.S.C. § 203(d), the NYLL, N.Y. Lab. Law §§ 2(6), 651(6), 190(3). the IMWL, 820 ILCS 115/2, and the IWPCA, 820 ILCS 115/13.

12.     At all relevant times, Defendant Terrence Cullen ("Cullen") was the owner of IHLC. At all times relevant, Cullen exercised operational control over IHLC, controlled significant business functions of IHLC, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of IHLC in devising, directing, implementing, and supervising the wage and hour practices and policies relating to the employees. As such, at all relevant times, Cullen was an "employer" as defined by the FLSA, 29 U.S.C. § 203(d), the NYLL, N.Y. Lab. Law §§ 2(6), 651(6), 190(3). the IMWL, 820 ILCS 115/2, and the IWPCA, 820 ILCS 115/13.

13.     At all relevant times, Defendant Kenneth Tumsuden ("Tumsuden") was the Vice President of Operations for IHLC. At all times relevant, Tumsuden exercised operational control over IHLC, controlled significant business functions of IHLC, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of IHLC in devising, directing, implementing, and supervising the wage and hour practices and policies relating to the employees. As such, at all relevant times, Tumsuden was an "employer" as defined by the FLSA, 29 U.S.C. § 203(d), the NYLL, N.Y. Lab. Law §§ 2(6), 651(6), 190(3). the IMWL, 820 ILCS 115/2, and the IWPCA, 820 ILCS 115/13.

14.     At all relevant times, Defendant Jeanne Wickes ("Wickes") was the Vice President of Operations. At all times relevant, Wickes exercised operational control over IHLC, controlled significant business functions of IHLC, determined employee salaries, made hiring decisions, and

4

acted on behalf of and in the interest of IHLC in devising, directing, implementing, and supervising the wage and hour practices and policies relating to the employees. As such, at all relevant times, Wickes was an "employer" as defined by the FLSA, 29 U.S.C. § 203(d), the NYLL, N.Y. Lab. Law §§ 2(6), 651(6), 190(3). the IMWL, 820 ILCS 115/2, and the IWPCA, 820 ILCS 115/13.

15.     At all relevant times, Defendant Ellen Zuckerman ("Zuckerman") was the Human Resources Director.  At all times relevant, Zuckerman exercised operational control over IHLC, controlled significant business functions of IHLC, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of IHLC in devising, directing, implementing, and supervising the wage and hour practices and policies relating to the employees. As such, at all relevant times, Zuckerman was an "employer" as defined by the FLSA, 29 U.S.C. § 203(d), the NYLL, N.Y. Lab. Law §§ 2(6), 651(6), 190(3). the IMWL, 820 ILCS 115/2, and the IWPCA, 820 ILCS 115/13.

## FACTS APPLICABLE TO THE CLASS AND COLLECTIVE ACTIONS

16.     At all relevant times, Defendants have employed loan officers throughout the United States including, upon information and belief, in New York, California, Connecticut, Colorado, Washington DC, Florida, Georgia, Illinois, Iowa, Maine, Maryland, Michigan, New Hampshire, New Jersey, North Carolina, Ohio, Oregon, Pennsylvania, Tennessee, Texas, and Wisconsin (hereafter "Plaintiffs").

17.     At all times relevant to this action, Galarza was employed as a loan officer for the benefit of and at the direction of Defendants.

18.     Galarza's primary job duties were always to originate mortgage loans for Defendants.

19.     These duties primarily included dealing with potential borrowers by telephone and through email transmissions.

20.     During his employment, Galarza performed his primary duties for Defendants at their office located at 25 Melville Park Road, Suite 105, Melville, New York.

21.     During his employment, Galarza also performed his primary duties for Defendants from a home office.

22.     During his employment, Galarza worked seven days a week.

23.     During this time, Galarza worked Monday through Friday from 7:00 a.m. to 10:00 p.m, Saturdays from 10:00 a.m. to 5:00 p.m., and Sunday's schedule fluctuated but was always a minimum of four hours.

24.     During this time, Galarza took a one hour meal break on Mondays through Fridays and no meal breaks on the weekends.

25.     During his employment, Galarza worked 81 hours each week.

26.     During his employment, Galarza was paid on a commission only basis.

27.     Defendants only paid Galarza when a loan that he worked on closed and funded.

28.     At all times relevant to this action, Agonath was employed as a loan officer for the benefit of and at the direction of Defendants.

29.     Agonath's primary job duties were always to originate mortgage loans for Defendants.

30.     These duties primarily included dealing with potential borrowers by telephone and through email transmissions.

31.     During their employment, Agonath, Allen, Daley, and Rogers performed their primary duties for Defendants at a home office located at 7006 Nathan Lane, Carpentersville, Illinois.

32.     This home office was equipped with computers, a phone system, a facsimile machine, printers, and all other tools necessary for these Named Plaintiffs to originate loans for Defendants.

33.     During his employment, Agonath worked 6 days a week with Sunday being his day off.

34.     During this time, Agonath worked Monday through Saturday for 10 hours each day with a meal break of a half hour.

35.     During his employment, Agonath worked 57 hours each week.

36.     During his employment, Agonath was paid a small salary plus commissions.

37.     Defendants only paid Agonath commissions when a loan that he worked on closed and funded.

38.     At all times relevant to this action, Allen was employed as a loan officer for the benefit of and at the direction of Defendants.

39.     Allen's primary job duties were always to originate mortgage loans for Defendants.

40.     These duties primarily included dealing with potential borrowers by telephone and through email transmissions.

41.     During his employment, Allen worked 7 days a week.

42.     During this time, Allen worked Monday through Sunday for 12 hours each day with a meal break of a half hour.

7

43.     During his employment, Allen worked 80.5 hours each week.

44.     During his employment, Allen was paid a small salary plus commissions.

45.     Defendants only paid Allen commissions when a loan that he worked on closed and funded.

46.     At all times relevant to this action, Daley was employed as a loan officer for the benefit of and at the direction of Defendants.

47.     Daley's primary job duties were always to originate mortgage loans for Defendants.

48.     These duties primarily included dealing with potential borrowers by telephone and through email transmissions.

49.     During his employment, Daley worked 5 days a week.

50.     During this time, Daley worked Monday through Friday for 10 hours each day with a meal break of a half hour.

51.     During his employment, Daley worked 47.5 hours each week.

52.     During his employment, Daley was paid a small salary plus commissions.

53.     Defendants only paid Daley commissions when a loan that he worked on closed and funded.

54.     At all times relevant to this action, Rogers was employed as a loan officer for the benefit of and at the direction of Defendants.

55.     Rogers' primary job duties were always to originate mortgage loans for Defendants.

56.     These duties primarily included dealing with potential borrowers by telephone and through email transmissions.

57.     During his employment, Rogers worked 5 days a week.

58.     During this time, Rogers worked Monday through Friday for 10 hours each day with a meal break of a half hour.

59.     During his employment, Rogers worked 47.5 hours each week.

60.     During his employment, Rogers was paid a small salary plus commissions.

61.     Defendants only paid Rogers commissions when a loan that he worked on closed and funded.

62.     At all relevant times, Defendants improperly classified Named Plaintiffs and other loan officers working for them as exempt from the overtime requirements of the FLSA and state law.

63.     Defendants failed to make and maintain true and accurate records of all the time worked by Named Plaintiffs and other loan officers.

64.     Defendants did not record the hours worked by Named Plaintiffs and other loan officers during each day and each week of their employment.

65.      Defendants knew or should have known that Named Plaintiffs and other loan officers worked in excess of forty (40) hours during each week of their employment.

66.     Defendants did not pay Named Plaintiffs and have not paid other loan officers' time-and-a-half their regular rates of pay for time worked in excess of forty (40) hours each week.

67.     Other loan officers who have worked and still work for Defendants are subject to the same practices and policies to deprive them of overtime wages as the Named Plaintiffs.

68.     Defendants managed Named Plaintiffs' and other loan officers' employment, including the amount of overtime worked. Defendants dictated, controlled, and ratified the wage and hour and all related employee compensation policies.

9

69.     Defendants' failure to pay proper wages in a timely manner were made without good faith, willful, and with reckless disregard for Named Plaintiffs' and other loan officers' rights; and Named Plaintiffs and other loan officers have been damaged by such failures.

## FLSA COLLECTIVE ACTION ALLEGATIONS

70.     Named Plaintiffs seeks to proceed as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following collective:

> All loan officers who worked for Defendants at any time from three (3) years prior to the filing of this action to the entry of judgment who have not been paid overtime wages for all time worked in excess of forty (40) hours in any given workweek (hereinafter "FLSA Class").

71.     The similarly situated putative plaintiffs are known to Defendants, are readily identifiable, and may be located through Defendants' records. They may be readily notified of this action, and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime wages.

72.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## 29 U.S.C. § 201, ET SEQ.
## FAILURE TO PAY OVERTIME WAGES

73.     Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

74.     The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or are employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).

75.     The corporate Defendant was and is subject to the overtime pay requirements of the FLSA because it is an enterprise engaged in commerce or in the production of goods for commerce.

76.     Named Plaintiffs and the FLSA class are individuals engaged in commerce because they regularly communicated with potential borrowers in several states throughout the United States by telephone and email transmissions.

77.     At all times relevant to this Complaint, Defendants had, and continue to have, employees handle goods or materials that have moved in interstate commerce, including the Plaintiffs who have worked as loan officers in New York and Illinois.

78.     Upon information and belief, the gross annual volume of sales made or business done by the Corporate Defendant for the years 2014 to the present has not been less than $500,000.00 each year.

79.     At all relevant times, Named Plaintiffs and members of the FLSA Class have been entitled to the rights, benefits, and protections granted by the FLSA, 29 U.S.C. § 207, *et seq*.

80.     Section 207(a)(1) of the FLSA states that an employer must pay its employees overtime equal to at least one and one half times the employee's regular rate of pay, for all hours worked in excess of 40 in any given workweek.

81.     By the above-alleged conduct, Defendants have violated the FLSA by failing to pay Named Plaintiffs and members of the FLSA Class overtime compensation as required by the FLSA.

82.     Section 13 of the FLSA, 29 U.S.C. §213, exempts certain categories of employees from the overtime compensation requirements set forth in Section 207(a)(1) of the FLSA. However, none of the Section 13 exemptions apply to the Named Plaintiffs or the similarly situated employees because they have not met the requirements for coverage under the exemptions.

83.    Named Plaintiffs and members of the FLSA Class are victims of a uniform company-wide compensation policy. This uniform policy, in violation of the FLSA, has been applied to all members of the FLSA collective action and has deprived them of overtime wages.

84.    Defendants have acted willfully and have either known that their conduct violated the FLSA or have shown reckless disregard for the matter of whether their conduct violated the FLSA. Defendants have not acted in good faith with respect to the conduct alleged herein.

85.    As a result of Defendants' violations of the FLSA, Named Plaintiffs and the members of the FLSA Class have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation, pursuant to 29 U.S.C. § 216(b).

## NEW YORK CLASS ALLEGATIONS

86.    Plaintiff Galarza also seeks to maintain this action as a class action, pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of himself individually and all other similarly situated employees who worked in New York and who, during the relevant statute of limitations period, have worked as loan officers with respect to the claims pleaded in Counts II, III, IV and V of the Complaint.

87.    Fed. R. Civ. P. 23(b)(3) provides that a cause of action may be maintained as a class action if the following elements are met:

(a)    The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

(b)    There are questions of law or fact common to the class which predominate over any questions affecting only individual members;

(c)    The claims or defenses of the representative parties are typical of the claims or defenses of the class;

(d)      Each representative Plaintiff will fairly and adequately protect the interests
of the class; and

(e)      A class action is superior to other available methods for the fair and efficient
adjudication of the controversy.

**Class Definition**

88.      Plaintiff Galarza seeks certification of a class consisting of the following

individuals:

All loan officers who worked for Defendants in the State of New York at any time
from six years prior to the filing of this Action to the entry of judgment who have
not been paid overtime wages for all time worked in excess of forty (40) hours in
any given workweek (hereinafter the "New York Class").

**Numerosity**

89.      Plaintiff Galarza satisfies the numerosity requirements as the proposed class is so

numerous that joinder of all members is impracticable.

90.      Members of the proposed class can be identified and located using the Defendants'

payroll and personnel records. Class members may be informed of the pendency of this action by

direct mail and/or published and broadcast notice.

**Common Questions of Fact or Law**

91.      There are questions of fact and law common to each class member and each of the

respective classes which predominate over questions affecting only individual members, if any.

The questions of fact and law common to each class member and each of the respective classes

arising from Defendants' actions include, but are not limited to, the following:

(a)      Whether Defendants can prove the members of the New York Class were
properly classified as exempt;

(b)      Whether Defendants can prove that their failure to pay overtime was in good
faith;

(c)      Whether Defendants' failure to pay overtime was willful;

13

(d)     Whether members of the New York Class worked in excess of forty (40) hours in given workweeks;

(e)     Whether members of the New York Class worked in excess of ten (10) hours on given workdays; and

(f)     Whether Defendants knew or should have known members of the New York class worked in excess of forty (40) hours in given workweeks.

92.     The questions set forth above predominate over any questions affecting only individual persons. With respect to considerations of consistency, economy, efficiency, fairness, and equity, a class action is superior to any other available methods for the fair and efficient adjudication of the controversy.

## Typicality

93.     Plaintiff Galarza's claims are typical of the claims of the class members. As a result of Defendants' unlawful conduct, Plaintiff Galarza suffered similar injuries as those suffered by other members of the respective class they seek to represent.

## Adequacy

94.     Plaintiff Galarza is an adequate representative of the class he seeks to represent because he is a member of the class, and his interests do not conflict with the interests of the members of the class he seeks to represent. The interests of the class members will be fairly and adequately protected by Plaintiff and his/her undersigned counsel. Plaintiff has hired competent attorneys who are experienced in class action litigation of this type and who are committed to the prosecution of this Action.

## Superiority

95.     A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class

action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually.

96.     Moreover, as the damages suffered by each class member may be relatively small, the expenses and burden of individual litigation would make it difficult for each class member to bring individual claims.

97.     The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests.

**COUNT II**
**VIOLATION OF THE NEW YORK LABOR ARTICLES 6 AND 19**
**<u>FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL</u>**

98.     Plaintiff Galarza reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

99.     At all relevant times, the members of the New York Class were employed by Defendants within the meaning of NYLL §§ 2 and 651.

100.    Under New York law, an employee must be paid overtime, equal to one and one half times the employee's regular rate of pay, for all hours worked in excess of 40 per week in the manner and methods provided by the FLSA. 12 NYCRR § 142-2.2.

101.    By the above-alleged conduct, Defendants have failed to pay members of the New York Class overtime compensation as required by the NYLL.

102.     The members of the New York Class are not exempt from the overtime provisions of the NYLL, because they have not met the requirements for any of the reduced number of exemptions available under New York law.

103.     The members of the New York Class are victims of a uniform company-wide compensation policy. This uniform policy, in violation of the NYLL, has been applied to all members of the New York Class and has deprived them of earned overtime compensation.

104.     Defendants have acted willfully and have either known that their conduct violated the NYLL or have shown a reckless disregard for the matter of whether their conduct violated the NYLL. Defendants have not acted in good faith with respect to the conduct alleged herein.

105.     As a result of Defendants' violations of the NYLL, members of the New York Class incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation, pursuant to the NYLL.

## COUNT III
## VIOLATION OF NEW YORK LABOR LAW SECTIONS 190, 191, AND 198
## FAILURE TO PAY WAGES WHEN DUE

106.     Plaintiff Galarza reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

107.     Defendants have failed to pay members of the New York Class all wages, including regular wages and commissions, for the hours they worked for Defendants and for the loans that they worked on that closed and funded.

108.     Due to Defendants' violations of the New York Labor Law, members of the New York Class are entitled to recover from Defendants unpaid regular wages, unpaid commissions, and reasonable attorneys' fees, costs and pre-judgment and post-judgment interest.

**COUNT IV**
**VIOLATION OF NEW YORK LABOR LAW**
**FAILURE TO PROVIDE COMPLETE WRITTEN STATEMENTS**
**CONCURRENT WITH THE PAYMENT OF WAGES**

109.    Plaintiff Galarza reasserts and re-alleges the allegations set forth in each of the paragraphs above.

110.    Pursuant to New York Labor Law Article 6 §195(1), as of April 9, 2011, all employers are required to provide employees with a written statement at the time of hiring and each year on or before February first notice which lists, inter alia, the rate or rates of pay and basis thereof.

111.    Pursuant to New York Labor Law Article 6 §195(3), as of April 9, 2011, all employers are required to provide employees with a written statement with the payment of wages which lists, inter alia, the number of regular and overtime hours worked and the overtime rate of pay.

112.    Defendants willfully and systematically failed to provide members of the New York Class with the required notices or written statements pursuant to New York Labor Law Article 6 §195(1) and (3).

113.    Accordingly, members of the New York Class are entitled to recover from Defendants damages pursuant to New York Labor Law Article 6 § 198.

114.    Plaintiff Galarza also seeks injunctive relief precluding Defendants from continued violations of these laws and affirmatively mandating their compliance with the provisions of the New York Labor Law.

**COUNT V**
**VIOLATION OF ILLINOIS MINIMUM WAGE LAW**
**IMWL UNPAID OVERTIME CLAIM**
**(Plaintiffs Agonath, Allen, Daley, and Rogers, Individually)**

115.   Plaintiffs Agonath, Allen, Daley, and Rogers, individually ("Illinois Plaintiffs")
incorporate by reference all preceding paragraphs.

116.   Defendants are "employers" and Illinois Plaintiffs are "employees" under the
IMWL, 820 ILCS § 105 *et seq.*

117.   Section 105/4(a) of the IMWL requires employers to pay employees one and one
half times their regular rate for all hours worked over forty (40) per work week. Section 105/12 of
the IMWL provides that employers who violate the provisions of this act are liable to affected
employees for unpaid wages, costs, attorneys' fees, damages of 2% of the amount of any such
underpayment for each month following the date of underpayments, and other appropriate relief.

118.   Defendants violated the IMWL, 820 ILCS § 105 *et seq.*, by regularly and repeatedly
failing to properly pay overtime pay to Illinois Plaintiffs.

119.   As a direct and proximate result of Defendants' unlawful conduct, Illinois Plaintiffs
have suffered and will continue to suffer lost wages and other damages.

**COUNT VI**
**VIOLATION OF ILLINOIS MINIMUM WAGE LAW**
**IMWL MINIMUM WAGE CLAIM**
**(Illinois Plaintiffs)**

120.   Illinois Plaintiffs incorporate by reference all preceding paragraphs.

121.   Defendants are "employers" and Illinois Plaintiffs are "employees" under the
IMWL, 820 ILCS § 105 *et seq.*

122.   The IMWL, 820 ILCS § 105, *et seq.*, requires employers to pay employees
minimum wages for all hours worked. Section 105/12 of the IMWL provides that employers who

violate the provisions of this act are liable to affected employees for unpaid wages, costs, attorneys' fees, damages of 2% of the amount of any such underpayment for each month following the date of underpayments, and other appropriate relief.

123.     Defendants violated the IMWL, 820 ILCS § 105 *et seq.*, by regularly and repeatedly failing to properly pay minimum wages to Illinois Plaintiffs.

124.     As a direct and proximate result of Defendants' unlawful conduct, Illinois Plaintiffs have suffered and will continue to suffer lost wages and other damages.

**COUNT VII**
**VIOLATION OF ILLINOIS WAGE PAYMENT AND COLLECTION ACT**
<u>**IWPCA MINIMUM WAGE CLAIM**</u>
**(Illinois Plaintiffs)**

125.     Illinois Plaintiffs incorporate by reference all preceding paragraphs.

126.     Defendants are "employers" and Illinois Plaintiffs were "employees" under the IWPCA, 820 ILCS §115 *et. seq*.

127.     Illinois Plaintiffs and Defendants entered into agreements which are valid and enforceable "contracts or employment agreements" as defined by the IWPCA ("Employment Agreements").

128.     The IWPCA requires employers to pay exempt employees all wages earned by an employee during a semi-monthly or bi-weekly pay period no later than 21 days after the end of the pay period in which such wages were earned. 820 ILCS 115/4. The IWPCA also requires employers to pay the final compensation of separated employees in full, at the time of separation,

if possible, but in no case later than the next regularly scheduled payday for such employee. 820 ILCS 115/2; 820 ILCS 115/5.

129.    Defendants' failure to pay the Illinois Plaintiffs pursuant to the terms of the parties' Employment Agreements constitutes a violation of the IWPCA.

130.    Illinois Plaintiffs have been damaged by Defendants' violation of the IWPCA.

## COUNT VIII
## VIOLATION OF ILLINOIS COMMON LAW
### Illinois Breach of Contract Claim
#### (Illinois Plaintiffs)

131.    Illinois Plaintiffs incorporate by reference all preceding paragraphs.

132.    Defendants' failure to pay the Illinois Plaintiffs pursuant to the terms of the Employment Agreements constitutes a material breach of contract.

133.    Illinois Plaintiffs have been damaged by Defendants' breach of contract.

## COUNT IX
## VIOLATION OF ILLINOIS COMMON LAW
### Retaliatory Discharge Under the FLSA, IMWL and IWPCA
#### (Illinois Plaintiffs)

134.    Illinois Plaintiffs incorporate by reference all preceding paragraphs.

135.    Defendants failed and refused to pay Plaintiffs anything after June 17, 2017.

136.    From approximately June 27, 2017 through their termination on July 21, 2017, Illinois Plaintiffs repeatedly advised Defendants, both orally in and writing, that they refused to work for free and demanded that Defendants comply with the Employment Agreements.

137.    Plaintiffs' written complaints and demands included, but were not limited to, the following:

A. On June 27, 2017 Plaintiff Agonath, on behalf of himself and all Illinois Plaintiffs, e-mailed Defendant Tumsuden demanding to be paid their earned

commissions from loans closed on May 25, 2017 and May 31, 2017;

B. On July 3, 2017, Plaintiff Allen, on behalf of himself and all Illinois Plaintiffs, sent numerous text messages to Defendant Tumsuden demanding to be paid their earned commissions;

C. On July 5, 2017, Plaintiff Allen, on behalf of himself and all Illinois Plaintiffs, sent numerous text messages to Defendant Tumsuden demanding to be paid their earned commissions;

D. On July 5, 2017, Plaintiff Allen, on behalf of himself and all Illinois Plaintiffs, sent a text message to Defendant Niven asking demanding to be paid their earned commissions.

138.    In addition, Plaintiffs made numerous oral complaints and demands of Defendants including, but not limited to a lengthy telephone conversation on July 10, 2017.

139.    Defendants terminated Illinois Plaintiffs on July 21, 2017.

140.    The FLSA, IMWL and IWPCA all contain express anti-retaliation provisions which prohibit adverse employment action as a result of complaints of unpaid wages and demands to employers that they comply with their employment agreements.  *See* 29 U.S.C. § 215(a)(3), 820 ILCS § 105/4, 820 ILCS 115/14(c).

141.    By refusing to work for free, advising Defendants that they refused to work for free, and demanding that Defendants comply with the Employment Agreements, Illinois Plaintiffs engaged in protected activity as defined by the FLSA, IMWA and IWPCA.

142.    Defendants' termination of Illinois Plaintiffs' employment with Defendants was causally related to Illinois Plaintiffs' complaints and demands as set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, the Law Offices of Erik H. Langeland, P.C., Stephan Zouras, LLP, and Neil H. Greenberg & Associates, P.C. demand judgment against Defendants, jointly and severally and in favor of Plaintiffs and all others similarly situated, for a sum that will properly, adequately, and completely compensate Plaintiffs and all others similarly situated for the nature, extent, and duration of the damages, costs of this action, and as follows:

A.   Order the Defendants to file with this Court and furnish to counsel a list of all names and addresses of all loan officers who currently work for or who have worked for Defendants within the last six years;

B.   Authorize Plaintiffs' counsel to issue a notice at the earliest possible time to all current and former loan officers employed by the Defendants during the six years immediately preceding this Action, informing them that this Action has been filed, of the nature of the Action, and of their right to opt into this lawsuit if they worked in excess of forty (40) hours in a week during the liability period, for which they were not paid required overtime in accordance with the FLSA and NYLL.

C.   Certify this case as a Rule 23 class action under the state law of New York;

D.   Declare and find that the Defendants committed one or more of the following acts:

1.   Violated provisions of the FLSA by failing to pay overtime wages to Plaintiffs and similarly situated persons who opt into this Action;

2.   Willfully violated the overtime provisions of the FLSA;

3.   Violated the provisions of the NYLL by failing to pay overtime wages and spread of hours pay to Plaintiff Galarza and all New York class members;

4.   Failed to pay wages when due to Plaintiff Galarza and all New York class members in violation of the NYLL;

5.      Failed to provide complete written statements concurrent with the payment of wages to Plaintiff Galarza and all New York class members in violation of the NYLL;

6.      Violated the provisions of the IMWL by failing to pay overtime and minimum wages to Illinois Plaintiffs;

7.      Violated the provisions of the IWPCA by failing to comply with their Employment Agreements with the Illinois Plaintiffs;

8.      Breached their written Employment Agreements with the Illinois Plaintiffs; and

9.      Retaliated against the Illinois Plaintiffs.

E.      Award compensatory damages, including all overtime compensation owed, in an amount according to proof;

F.      Award liquidated damages;

G.      Award interest on all NYLL claims and other compensation due accruing from the date such amounts were due;

H.      Award all reasonable attorney's fees and costs incurred;

I.      Award 2% per month interest on all unpaid wages due to the Illinois Plaintiffs under the IMWL accruing from the date such amounts were due until it is paid;

J.      Award punitive damages;

K.      Grant leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

L.      Provide such further relief as the Court deems just and equitable.


## **JURY DEMAND**

Plaintiffs hereby demands a trial by jury.

23

Dated: September 7, 2017                    Respectfully Submitted,

_/s/ Erik H. Langeland_____
The Law Offices of Erik H. Langeland, PC
733 Third Avenue, 15th Floor
New York, New York 10017
(212) 354-6270
(212) 898-9086 f
elangeland@langelandlaw.com


_/s/ James B. Zouras_____
James B. Zouras*
Ryan F. Stephan*
Haley R. Jenkins*
Stephan Zouras, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
312-233-1550
312-233-1560 f
jzouras@stephanzouras.com
www.stephanzouras.com
* Subject to admission to this Court *pro hac vice*


Neil H. Greenberg & Associates, P.C.
By: Justin M. Reilly, Esq.
4242 Merrick Road
Massapequa, New York 11758
(516) 228-5100
(516) 228-5106
Justin@nhglaw.com

**ATTORNEYS FOR NAMED PLAINTIFFS AND
THE PUTATIVE CLASS AND COLLECTIVE**