IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JEFFERY AGONATH, JAMES ALLEN, BRIAN       **Docket No.:** 17-cv-5267-JS-SIL
DALEY, KEVIN ROGERS, and MICHAEL
GALARZA, Individually, and Behalf of All Others
Similarly Situated,

           Plaintiffs,

   v.

INTERSTATE HOME LOANS CENTER, INC.,
TERENCE CULLEN, ALEX NIVEN, KENNETH
TUMSUDEN, JEANNE WICKES, and ELLEN
ZUCKERMAN,

           Defendants.
----------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED AS A COLLECTIVE ACTION AND TO FACILITATE NOTICE UNDER 29 U.S.C. SECTION 216(b)

Respectfully Submitted,

**CAMPOLO, MIDDLETON
& McCORMICK, LLP**
*Attorneys for Defendants*
4175 Veterans Memorial Highway
Suite 400
Ronkonkoma, New York 11779
(631) 738-9100

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

ARGUMENT ....................................................................................................... 6

POINT I .............................................................................................................. 7

CERTIFICATION OF PLAINTIFFS' PROPOSED COLLECTIVE ACTION MUST BE DENIED BECAUSE LOAN OFFICERS AT INTERSTATE ARE NOT SIMILARLY SITUATED ........................................................................................................... 7

    A.    Plaintiffs Are Not Similarly Situated Because Interstate's Loan Officers Are Subject to Disparate Employment Conditions ........................................................................ 7

        1.    Loan Officers At Interstate Have Significantly Different Terms Of Employment Because Interstate Exerts Varying Degrees Of Control Over Loan Officers Depending On Their Job Functions ............................................................................................. 8

        2.    Loan Officers Have Varying Compensation Structures Depending On Their Job Function ..................................................................................................... 9

    B.    Plaintiffs Are Not Similarly Situated Because An Individuated Inquiry Is Necessary To Determine Each Opt-in Plaintiff's Membership ................................................... 10

    C.    Loan Officers At Interstate Are Not Subject To A Common Policy Of Compensation Due To The Existence And Application Of The Outside Sales Exemption ............................ 12

    D.    Plaintiffs' Putative Class Does Not Serve Judicial Convenience ...................................... 13

    E.    The Boilerplate Affidavits Of Plaintiffs Do Not Demonstrate by a "Modest Factual Showing" of Similarly Situated Status Among Loan Officers ................................................ 14

POINT II ............................................................................................................ 16

PLAINTIFFS' PROPOSED NOTICE IS DEFECTIVE ................................................ 16

    A.    The Notice Should Have A Two, Rather Than Three Year, Window ............................... 16

    B.    The Group Identified To Receive The Opt-In Notice Is Overly Broad ............................. 18

    C.    Plaintiffs' Request To Post Notices In Conspicuous Locations And Via E-mail To Solicit Potential Opt-in Plaintiff's Is Inappropriate ................................................ 18

    D.    Plaintiffs' Proposed Notice Should Be Rejected As Misleading ...................................... 19

        1.    A Description Of Interstate's Position Must Be Included ............................................. 19

        2.    The Notice Should Advise Opt-Ins Of Their Obligations As Plaintiffs ......................... 20

CONCLUSION .................................................................................................... 21

## **TABLE OF AUTHORITIES**

## **CASES**

*Ahmed v. T.J. Maxx Corp.*,
  103 F.Supp.3d 343 (E.D.N.Y. 2015)....................................................................... 6, 19

*Barfield v. New York City Health & Hosps. Corp.*,
  No. 05 CIV. 6319 (JSR), 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) .............................. 14

*Belcher v. Shoeney's, Inc.*,
  927 F.Supp. 249 (M.D. Tenn. 1996) ...................................................................... 19

*Belt v. Emcare, Inc.*,
  299 F.Supp.2d 664, 671 (E.D. Tenn. 2003) .............................................................. 19

*Brown v. Barnes & Noble, Inc.*,
  252 F. Supp. 3d 255, 261 (S.D.N.Y. 2017)............................................................ 13, 15

*Cano v. Four M Food Corp.*,
  No. 08-CV-3005(JFB)(AKT), 2009 WL 5710143, at *6 (E.D.N.Y. Feb. 3, 2009). ................. 15

*Chemi v. Champion Mortg.*,
  No. 05-CV-1238 WHW, 2006 WL 7353427, at *5 (D.N.J. June 21, 2006)............ 8, 10, 12, 14

*Chhab v. Darden Rests., Inc.*,
  No. 11 Civ. 8345, 2013 WL 5308004, at *17 (S.D.N.Y. Sept. 20, 2013) .............................. 19

*Clausman v. Nortel Networks, Inc.*,
  No. IP02-0400-CMS, 2003 WL 21314065, at *4 (S.D. Ind. May 1, 2003)............ 11, 12, 13, 14

*Damassia v. Duane Reade, Inc.*,
  No. 04-cv-8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006)........................... 6

*Davis v. Lenox Hill Hosp.*,
  No. 03-CV-3746 DLC, 2004 WL 1926086, at *7 (S.D.N.Y. 2004) .............................. 10, 17

*Diaz v. Elecs. Boutique of Am., Inc.*,
  No. 04-CV-0840E, 2005 WL 2654270, at *4 (W.D.N.Y. Oct. 17, 2005) ............................. 10

*El v. Potter*,
  2004 WL 2793166 (S.D.N.Y. 2004) ...................................................................... 17

*Gordon v. Kaleida Health*,
  No. 08-Civ.-378S, 2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009) ............................. 19

*Grace v. Family Dollar Stores*, Inc.,
  No. 3:06-CV-306, 2007 U.S. Dist. LEXIS 66096 (W.D.N.C. Sept 6, 2007) .................... 8, 10

*Guillen v. Marshalls of MA, Inc.*,
  750 F.Supp.2d 469 (S.D.N.Y. Jan. 13, 2012)........................................................... 6

*Hintergerger v. Catholic Health Sys.*,
  No. 08-cv-380S, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009). .............................. 19

*Iriarte v. Redwood Deli and Catering, Inc.*,
  No. CV–07–5062, 2008 WL 2622929, (E.D.N.Y. June 30, 2008) ........................... 15

*Jacobs v. New York Foundling Hosp.*,
    483 F.Supp.2d 251 (E.D.N.Y. 2007).................................................................. 7, 10

*Jin Yun Zheng v. Good Fortune Supermarket Group (USA), Inc.*,
    No. 13-CV-60 ILG, 2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013)........................ 15

*Karvaly v. eBay, Inc.*,
    245 F.R.D. 71 (E.D.N.Y. 2007) .......................................................................... 18

*McLaughlin v. Richland Shoe Com*,
    486 U.S. 128 (1998) ........................................................................................... 17

*Morales v. Plantworks, Inc.*,
    No. 05-cv-2349 (DC), 2006 WL 278154, at *2–3 (S.D.N.Y. Feb. 2, 2006)......................... 6, 14

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)........................................................................... 6, 14

*Olivo v. GMAC Mortg. Corp.*,
    374 F. Supp. 2d 545 (E.D. Mich. 2004) ........................................ 8, 10, 12, 13, 14

*Reab v. Elec. Arts, Inc.*,
    214 F.R.D. 623 (D. Colo. 2002)......................................................................... 20

*Robbins-Pagel v. Puckett*,
    No. 6:05CV1582 ORL31DAB, 2006 WL 3393706 (M.D. Fla. Nov. 22, 2006) ...................... 20

*Rodolico v. Unisys Corp.*,
    199 F.R.D. 468 (E.D.N.Y. 2001) ................................................................ 7, 10, 13

*Trinh v. JP Morgan Chase & Co.*,
    No. 07-CV-1666 W (WMC), 2008 WL 1860161 (S.D. Cal. Apr. 22, 2008).. 7, 8, 10, 11, 13, 14

## **STATUTES**

29 U.S.C. § 256................................................................................................ 16-17

29 U.S.C. § 216(b) ................................................................................................ 21

## **PRELIMINARY STATEMENT**

This case presents the issue of whether disparately situated loan officers employed by Defendant Interstate Home Loan Center, Inc. ("Interstate") were properly classified as exempt employees under the Fair Labor Standards Act ("FLSA"). Other than sharing a similar job title, loan officers employed by Interstate are subject to radically different terms of employment depending on how they originate mortgage loans. Some loan officers, such as Plaintiff Michael Galarza, have networks of external contacts which they utilize by devoting their time engaging in functions outside of the office to develop more loan originations. Other loan officers for Interstate work primarily in the traditional office setting where they rely on proprietary customer lists and leads to solicit loans via telephone calls and e-mails. To further demonstrate how disparately situated loan officers are, some loan officers, such as Plaintiffs Jeffery Agonath, James Allen, Brian Daley, and Kevin Rogers, do not work for Interstate in New York, but rather are scattered around the United States with no set hours and subject to virtually no control or oversight by Interstate.

Despite how disparately situated loan officers at Interstate are, Plaintiffs nonetheless seek to proceed as a collective and facilitate notice to all Interstate loan officers. Aside from the glaring issue that loan officers at Interstate are not even remotely similarly situated, several other reasons exist demonstrating why the putative class that Plaintiffs seek to represent cannot be certified. One reason is that the putative class Plaintiffs seek to represent is overly broad in that it improperly includes some employees that are exempt from overtime wages under the FLSA, thus requiring this Court to engage in highly individualized and fact intensive inquiries to determine whether potential opt-in plaintiffs share similar employment terms as Plaintiffs. Furthermore, due to the outside sales exemption of the FLSA, it is impossible for all loan officers at Interstate

to be subject to the same policy of compensation. Additionally, the putative class Plaintiffs seek to represent is antithetical to the primary function of a collective action, which is to provide judicial convenience.

Thus, at such a preliminary stage in this litigation, even conditional certification of Plaintiffs' putative class consisting of an unwieldy amalgam of exempt and non-exempt loan officers is inappropriate because loan officers at Interstate are not similarly situated and judicial convenience is not served by requiring this court to engage in the unduly time-consuming task of determining whether potential opt-in Plaintiffs are similarly situated.

## STATEMENT OF FACTS

### A.     Nature of Interstate's Business

Interstate is a mortgage lender that utilizes loan officers to originate mortgage loans. Interstate is headquartered in Melville, New York, the location where most of its inside loan officers work, but Interstate also employs loan officers that engage in sales predominantly outside of the office, as well as some that are stationed exclusively outside of the State of New York. Niven Aff. at ¶ 5-9. Plaintiff Michael Galarza ("Galarza") is a loan officer who was employed by Interstate as a loan officer for approximately one year who primarily engaged in originating mortgage loans outside of the office. Niven Aff. at ¶ 3. Plaintiffs Jeffery Agonath ("Agonath"), James Allen ("Allen"), Brian Daley ("Daley"), and Kevin Rogers ("Rogers") (collectively "Illinois Plaintiffs"), are loan officers in Illinois who were employed by Interstate for a brief period of about four (4) months. Niven Aff. at ¶ 3.

### B.     Loan Officers At Interstate Are Disparately Situated

Aside from sharing the same job title, loan officers at Interstate are disparately situated depending on their classifications and job duties. Niven Aff. at ¶ 5. The disparate circumstances

of loan officers is exemplified by the juxtaposition of the Plaintiffs named herein and the potential opt-in plaintiffs identified in Galarza's Declaration.

The Plaintiffs named herein are loan officers that worked for Interstate outside of Interstate's Melville office. Niven Aff. at ¶¶ 8, 10. These loan officers were afforded significant flexibility in scheduling to maximize their business development. Niven Aff. at ¶¶ 17, 25-27. Interstate did not control their hours or work responsibilities.

On the other hand, the potential opt-ins identified by Plaintiffs are non-exempt inside loan officers. Niven Aff. at ¶ 30. These loan officers work in a structured work office environment. Niven Aff. at ¶ 7. They work exclusively from Interstate's Melville office and originate loans predominantly via telephone and e-mail solicitations. Interstate controls their hours, work responsibilities, and provides them with necessary equipment and resources. Niven Aff. at ¶ 7. Most, if not all, of these inside loan officers are compensated by both hourly pay, as well as commissions for closing loans. Niven Aff. at ¶ 7. These inside loan officers also use time clocks to track their hours to ensure that their hours are accurately recorded and paid in accordance with applicable overtime laws. Niven Aff. at ¶ 7.

1.    <u>Galarza is an Outside Loan Officer Exempt Under the FLSA</u>

Galarza was employed by Interstate as an outside loan officer to work out of Interstate's Melville office. Niven Aff. at ¶ 13. Galarza came to Interstate with a network of external connections with investors, brokers, and other contacts from which he developed business and potential leads. Niven Aff. at ¶ 14. At Interstate, Galarza utilized two telemarketers that he brought with him to Interstate from his prior employment to generate leads for him while he was out in the "field" to maximize loan originations. Niven Aff. at ¶ 15. The effect of this was that it enabled Galarza to work almost exclusively outside the office to originate loans. Niven Aff. at ¶

15. Accordingly, on a daily basis, Galarza did not keep regular hours and was regularly out of the office meeting with leads, customers, and his connections. Niven Aff. at ¶ 16. Thus, Galarza primarily worked outside of the office to focus on developing business by exploiting his network of connections. Niven Aff. at ¶ 16.

Due to the nature of Galarza's outside sales oriented position, Interstate afforded him significant flexibility and had no control over his activities. Niven Aff. at ¶ 17. Galarza had no set hours, he came and went to the office as he pleased, and he was not required to report his activities to Interstate. Niven Aff. at ¶ 17. Instead, Galarza was paid commissions as he closed loans. Niven Aff. at ¶ 17. Based on his job functions, Galarza was considered an outside salesperson, and, as such, was exempt from overtime compensation under the FLSA. Niven Aff. at ¶ 18. Significantly, in the one year he worked for Interstate, Galarza earned over $200,000 in compensation. Niven Aff. at ¶ 9.

2. <u>Opt-in Loan Officers Referenced in Galarza's Declaration are Inside Loan Officers who are Non-Exempt Employees and Not Similarly Situated to Plaintiffs</u>

Plaintiffs refer to Christopher Fiacco, Marvin Glasgold, and Anthony LaRocca as similarly situated Plaintiffs in Galarza's Declaration. Unlike Galarza, the potential opt-ins identified are inside loan officers that primarily worked in Interstate's Melville office by making telephone calls and sending e-mails to solicit leads and originations. Niven Aff. at ¶ 20. Unlike Galarza and other outside loan officers, inside loan officers were and are subject to more traditional office settings. Interstate controls their hours, work responsibilities, and they were and are required to utilize a time clock. Niven Aff. at ¶ 22. Accordingly, because inside loan officers do not engage in outside sales, Interstate classifies them as non-exempt employees and pays

them overtime compensation in accordance with the law to the extent they worked overtime hours. Niven Aff. at ¶ 21.

        3.     <u>Illinois Plaintiffs Agonath, Allen, Daley, And Rogers Are Out-of-<br>State Loan Officers That Were Employed in Illinois</u>

Unlike the loan officers stationed at Interstate's office in Melville, New York, Illinois Plaintiffs Agonath, Allen, Daley, and Rogers were out-of-state loan officers that worked exclusively in Illinois. Niven Aff. at ¶ 23. Interstate exerted no control over the way in which Illinois Plaintiffs organized themselves or the business approach they utilized to originate loans. Niven Aff. at ¶ 25. Interstate did not provide them with any office equipment, pay rent for any space they occupied, or provide them with an Interstate phone number or email address. Niven Aff. at ¶ 25. Given their collective failure to close loans for Interstate, their employment was terminated after a few months. Niven Aff. at ¶ 27.

**C.**     **Certification Of A Collective Action Is Inappropriate**

Due to the significantly disparate situations of loan officers at Interstate, proceeding as a collective action is inappropriate. The Plaintiffs named herein are not even similarly situated to each other, let alone to potential opt-in Plaintiffs or to any other Interstate employee. The Plaintiffs improperly seek to conditionally certify an overly broad putative class that improperly includes employees that are exempt from overtime compensation under the FLSA. As a result, this Court would be required to engage in highly fact-intensive inquiries as to whether potential opt-in plaintiffs' employment terms are similar to the Plaintiffs named herein or if they are exempt under the FLSA. Even if employment terms were similar, the Court would still also need to determine if there was a uniform policy as to payment to each of the putative class members, which there was not.

To proceed as a collective in this case would undermine the judicial convenience collective actions are supposed to provide. Notably, judicial convenience is not achieved by requiring this Court to handle such an unwieldy class of Plaintiffs made up of both exempt and non-exempt employees, as well as out-of-state loan officers subject to completely separate terms of employment.

Thus, it is respectfully submitted that, at such an early stage in the litigation, Plaintiffs cannot establish that they are similarly situated to other Interstate employees or that there was any uniform policy of compensation for loan officers at Interstate that would warrant this action being conditionally certified as a collective action.

## **ARGUMENT**

At the initial stage, the "court need not evaluate the underlying merits of a plaintiff's claims to determine whether the plaintiff has made the minimal showing necessary for court-authorized notice." *Damassia v. Duane Reade, Inc.*, No. 04-cv-8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006). However, certification is not automatic. *See, e.g., Ahmed v. T.J. Maxx Corp.*, 103 F.Supp.3d 343, 349-57 (E.D.N.Y. 2015) (affirming the denial of conditional certification); *Guillen v. Marshalls of MA, Inc.*, 750 F.Supp.2d 469, 476-80 (S.D.N.Y. Jan. 13, 2012) (denying certification at the first stage). Although plaintiffs' factual showing is modest, it cannot be satisfied by unsupported assertions or conclusory allegations. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010); *Morales v. Plantworks, Inc.*, No. 05-cv-2349 (DC), 2006 WL 278154, at *2–3 (S.D.N.Y. Feb. 2, 2006). Plaintiffs must make a sufficient showing that they are similarly situated and were victims of a common scheme or plan that violated the law. *Morales*, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006).

**POINT I**

**CERTIFICATION OF PLAINTIFFS' PROPOSED COLLECTIVE ACTION MUST BE DENIED BECAUSE LOAN OFFICERS AT INTERSTATE ARE NOT SIMILARLY SITUATED**

As evidenced by the dissimilar employment terms of the Plaintiffs named herein, as well as the potential plaintiffs, a collective action cannot be certified in this case. In considering whether individuals are similarly situated, courts consider several factors including: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) whether employees suffered injury because of a common policy; and (4) fairness and procedural considerations. *Jacobs v. New York Foundling Hosp.*, 483 F.Supp.2d 251, 265 (E.D.N.Y. 2007); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 482 (E.D.N.Y. 2001). As demonstrated below, these factors as applied to this case establish that the Plaintiffs named herein are neither similarly situated to each other nor to potential opt-in plaintiffs.

**A.    Plaintiffs Are Not Similarly Situated Because Interstate's Loan Officers Are Subject to Disparate Employment Conditions**

Plaintiffs cannot certify a collective action where the potential opt-in plaintiffs worked under radically different terms and conditions of employment than the named plaintiffs. In particular, courts have found that mortgage loan officers are often not similarly situated and thereby precluded from pursuing overtime claims in a collective action. *Trinh v. JP Morgan Chase & Co.*, No. 07-CV-1666 W (WMC), 2008 WL 1860161, at *4, n.4 (S.D. Cal. Apr. 22, 2008) ("[F]inding whether JPMorgan loan officers are 'exempt' necessarily involves a fact-by-fact inquiry into the circumstances of each employee to see if he or she falls within an administrative, outside sales, highly compensated, combination, or any other exemption" thereby

precluding a collective action."); *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 550 (E.D. Mich. 2004); *Chemi v. Champion Mortg.*, No. 05-CV-1238 WHW, 2006 WL 7353427, at *5 (D.N.J. June 21, 2006) (denying collective action notice in mortgage loan officer cases because "any determination of whether an employee is properly exempted under the FLSA involves a fact-intensive inquiry into each putative class members employment circumstances.").

Courts have recognized that, aside from loan officers sharing common job title within an organization, loan officers typically have different job duties and compensation within an organization. *Trinh*, 2008 WL 1860161, at *4, n.4. These substantial differences in employment terms and job responsibilities are sufficient to warrant rejecting class certification. *Grace v. Family Dollar Stores, Inc.*, No. 3:06-CV-306, 2007 U.S. Dist. LEXIS 66096 at *6 (W.D.N.C. Sept 6, 2007) (declining to authorize notice because individualized inquiries are necessary to resolve issues of classification and job duties).

The Plaintiffs named herein, as well as the potential opt-in plaintiffs identified in Galarza's Declaration, perfectly illustrate just how disparately situated loan officers are at Interstate due to their radically different terms of employment. In particular, loan officers at Interstate were subjected to varying levels of control by Interstate and compensation structures differed based on loan officers' job functions.

    1.    <u>Loan Officers At Interstate Have Significantly Different Terms Of Employment Because Interstate Exerts Varying Degrees Of Control Over Loan Officers Depending On Their Job Functions</u>

Outside loan officers and out-of-state loan officers are afforded complete freedom in connection with their everyday job duties. Niven Aff. at ¶¶ 17, 25. Interstate has no control over how these loan officers develop their own originations. Niven Aff. at ¶¶ 17,25. In particular, Galarza was given flexibility to enable him to routinely engage in functions outside the office to

facilitate the development of external networks. Niven Aff. at ¶ 9. Likewise, the Illinois Plaintiffs were located in Illinois where they individually conducted their own business, were not subject to any formal office setting, and did not have set hours. Niven Aff. at ¶ 10. The Illinois Plaintiffs did not work in an Interstate office, and Interstate did not provide any office equipment such as phones, computers, desks, or an Interstate phone number or e-mail address. Niven Aff. at ¶ 25.

Unlike the highly flexible and freeform employment terms Plaintiffs named herein had, the potential opt-in Plaintiffs identified in Galarza's Declaration were subject to employment terms more akin to that of a typical hourly employee. Niven Aff. at ¶¶ 7, 19-22. Specifically, Christopher Fiacco, Marvin Glasgold, and Anthony LaRocca, were inside loan officers that worked in Interstate's Melville office. Inside loan officers generally worked normal business hours and were required to use timeclocks and were paid overtime, if applicable. Niven Aff. at ¶¶ 7, 19-22.

        2.     <u>Loan Officers Have Varying Compensation Structures Depending On Their Job Function</u>

The differing compensation structures provided to loan officers at Interstate further demonstrates how disparately situated they are with respect to their employment. Outside loan officers are generally compensated with commissions which are earned as loans are closed. *Id.* at ¶ 9. On the other hand, compensation for inside loan officers is generally a combination of hourly wages based on a set rate of pay and hours worked, as well as commissions which are earned as loans are closed. Niven Aff. at ¶ 7. Furthermore, as admitted in the Illinois Plaintiffs' Declarations, they were paid an annual salary plus commissions earned as loans closed. Niven Aff. at ¶ 10. Such disparate employment terms and compensation structures unequivocally demonstrate that Plaintiff's and potential opt-in plaintiffs are not similarly situated. *Jacobs*, 483

F.Supp.2d at 265; *Olivo* 374 F. Supp. 2d at 550; *Chemi*, 2006 WL 7353427, at *5; *Rodolico*, 199 F.R.D. at 482.

**B.      Plaintiffs Are Not Similarly Situated Because An Individuated Inquiry Is Necessary To Determine Each Opt-in Plaintiff's Membership**

It is well settled that certification is inappropriate when an individuated inquiry is necessary to determine each plaintiff's proper membership as a similarly situated plaintiff. *See, e.g., Grace v. Family Dollar Stores, Inc.*, No. 3:06-CV-306, 2007 U.S. Dist. LEXIS 66096 at *6 (W.D.N.C. Sept 6, 2007); *Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-CV-0840E, 2005 WL 2654270, at *4 (W.D.N.Y. Oct. 17, 2005) (finding plaintiffs were not "similarly situated" to those they sought to represent based on the existence of individual inquiries needed to resolve plaintiffs' exempt status); *Davis v. Lenox Hill Hosp.*, No. 03-CV-3746 DLC, 2004 WL 1926086, at *7 (S.D.N.Y. 2004) (holding that the plaintiff, a nurse in an exempt program claiming denial of overtime wages, was not similarly situated to nonexempt nurses).

Accordingly, federal courts have specifically denied certifying collective actions against mortgage companies when mortgage loan officers bring an action under the FLSA seeking to recover alleged overtime, but improperly include loan officers and potential plaintiffs that are exempt under the FLSA as "outside salesman." *Olivo*, 374 F. Supp. 2d at 550 (denying collective action notice due to presence of outside sales exemption). Courts analyzing complex litigation concerning whether loan officers are exempt under the FLSA have concluded that it requires individualized fact intensive inquiries that the court is not in the position to determine at such an early stage in the litigation. *See e.g., Trinh*, 2008 WL 1860161, at *4; *Olivo*, 374 F.Supp.2d at 549-550 ("[S]ince Defendant primarily relies upon the "outside salesman" exemption, the Court must make a fact intensive inquiry to determine whether each and every potential plaintiff falls within that exemption."); *Chemi*, 2006 WL 7353427, at *9 (denying collective action notice in

mortgage loan officer case, holding that "any determination of whether an employee is properly exempted under the FLSA involves a fact-intensive inquiry into each putative class member's employment circumstances."); *Clausman v. Nortel Networks, Inc.*, No. IP02-0400-CMS, 2003 WL 21314065, at *4 (S.D. Ind. May 1, 2003) (denying collective action notice "where liability to each plaintiff will depend on whether that plaintiff was correctly classified as an 'outside salesman.'").

Moreover, the case law Plaintiffs cite to in support of its assertion that courts in this district routinely grant FLSA conditional certification for loan officers in "virtually indistinguishable settings" is plainly inapposite. Plaintiffs' Memo of Law at 9. The case law Plaintiffs cite to fails to address circumstances analogous to this case. Plaintiffs' analysis failed to address collective actions wherein both outside loan officers and inside loan officers are involved or FLSA exemptions regarding loan officers are at issue. Thus, the case law Plaintiffs rely upon is inapposite and provides no useful guidance in determining how this case should be treated.

The instant case is analogous to *Trinh*, *Olivo*, *Chemi*, and *Clausman* wherein the courts there analyzed the exact issue present in this case and denied plaintiffs' motions for certification of collective actions due to the existence and application of FLSA exemptions. In those cases, the courts refused to engage in individuated inquires to determine whether each and every opt-in loan officer was exempt or not exempt under the outside sales exemption. The holdings in those analogous cases provide guidance to the Court in this case.

Accordingly, it is inappropriate to certify a collective action because to do so would require this Court to make highly fact intensive inquiries into each and every opt-in Plaintiff's employment circumstances. Niven Aff. at ¶¶ 29-31; *Trinh*, 2008 WL 1860161, at *4; *Olivo*, 374

F.Supp.2d at 549-; *Chemi*, No. 2:05cv01238–WHW–CCC, at *9; *Clausman*, 2003 WL 21314065, at *4.

**C.    Loan Officers At Interstate Are Not Subject To A Common Policy Of Compensation Due To The Existence And Application Of The Outside Sales Exemption**

Federal courts have held that cases involving the application of the outside sales exemption as to mortgage loan officers precludes plaintiffs from being able to demonstrate that they were victims of a common policy and thus cannot demonstrate they are similarly situated. *Olivo*, 374 F. Supp. 2d at 551; *Clausman*, 2003 WL 21314065, at *4-6. As the *Olivo* court astutely noted:

> Since the Court finds that, generally, the outside sales exemption . . . applies to Defendant's loan officers, the Court concludes that Plaintiffs are unable to demonstrate that they, and the potential plaintiffs, were "victims of a common policy or plan that violated the law," and, therefore, that Plaintiffs have failed to demonstrate that they are "similarly situated" to other . . . loan officers.

*Olivo*, 374 F. Supp. 2d at 551 (citation omitted).

Similar to the holdings in *Olivo* and *Clausman*, Plaintiffs' motion to conditionally certify a collective action must be denied. Plaintiffs have failed to demonstrate how loan officers at Interstate are subject to a common policy. Plaintiffs' putative class improperly includes loan officers that are exempt from overtime compensation under the FLSA. Niven Aff. at ¶¶ 29-30. The existence and application of the outside sales exemption militates against a finding that Plaintiffs were subject to a common policy because a common policy does not exist if certain employees are classified as exempt employees and others are classified as non-exempt employees. *Olivo*, 374 F. Supp. 2d at 551; *Clausman*, 2003 WL 21314065, at *4-6.

**D.      Plaintiffs' Putative Class Does Not Serve Judicial Convenience**

A putative class as proposed by Plaintiffs is antithetical to the entire purpose of a collective action, which is to facilitate swift and economic justice. *Brown v. Barnes & Noble, Inc.*, 252 F. Supp. 3d 255, 261 (S.D.N.Y. 2017). This is especially true when the class plaintiffs seek to represent is made up of a mixture of loan officers, some of which are exempt under the FLSA and others that are non-exempt employees. *See, e.g.*, *Olivo*, 374 F.Supp.2d at 550 ("Depending upon the number of loan officers that elect to opt in to the proceedings, such a determination would be incredibly time consuming, and, as a matter of sound case management, would weigh against a finding that a manageable class exists."); *Trinh*, 2008 WL 1860161, at *4 ("Other courts analyzing complex litigation concerning whether loan officers were exempt have concluded that the need for individual evidence makes a class or collective action an unwieldy method for determining the rights of many litigants."); *Clausman*, 2003 WL 21314065, at *4. Courts have noted that Plaintiffs' reliance on common evidence is a key consideration in determining whether judicial economy is served. *Rodolico*, 199 F.R.D. at 482; *see also Trinh*, 2008 WL 1860161, at *4.

In this case, Plaintiffs' purported class and proposed notice is too unwieldy to warrant a collective action. Niven Aff. at ¶¶ 29-31; *Olivo*, 374 F. Supp. 2d at 551; *Clausman*, 2003 WL 21314065, at *4-6. As discussed at length hereinabove, the Court here will be required to engage in individuated factual inquiries as to whether potential plaintiff loan officers are exempt or non-exempt FLSA employees. Requiring this Court to engage in such determinations would be unduly burdensome and time consuming. *Olivo*, 374 F.Supp.2d at 550. Likewise, the notice solicits potential plaintiffs from across the nation, including other outside loan officers that work in different states and under different terms of employment. *Olivo*, 374 F.Supp.2d at 550;

*Clausman*, 2003 WL 21314065, at *4. Plaintiffs have presented no methods to distinguish between exempt and non-exempt loan officers. Plaintiffs improperly seek to represent all loan officers—*including those that are exempt from the FLSA*. Additionally, because an FLSA exemption is at issue, Plaintiffs will not be able to rely on common evidence to establish the appropriateness of their class membership and underlying claims. *Olivo*, 374 F.Supp.2d at 550; *see also Trinh*, 2008 WL 1860161, at *4. Thus, certification is inappropriate at this time because it is not judicially convenient.

### E.   The Boilerplate Affidavits Of Plaintiffs Do Not Demonstrate by a "Modest Factual Showing" of Similarly Situated Status Among Loan Officers

As cautioned in *Chemi*, "[e]ven at the notice stage, the Court may not blithely assume, as suggested by Plaintiffs, that satisfying similarly situated standards can be accomplished by alleging in conclusory fashion that all loan officers were subject to the same policy." *Chemi*, 2006 WL 7353427, at *4. Plaintiffs' reliance on self-serving, boilerplate affidavits fails to satisfy their burden of demonstrating a "modest factual showing" of the existence of similarly situated plaintiffs. Courts have held that "unsupported assertions" or conclusory allegations fail to demonstrate a modest factual showing. *Myers*, 624 F.3d at 555 (citation omitted); *Morales*, 2006 WL 278154, at *2-3 (S.D.N.Y. Feb. 2, 2006) ("Plaintiffs have offered only a conclusory allegation in their complaint; they have offered nothing of evidentiary value.").

Similarly, allegations based on anecdotal evidence fail to satisfy Plaintiffs' burden. *Barfield v. New York City Health & Hosps. Corp.*, No. 05 CIV. 6319 (JSR), 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005) (denying certification where "plaintiff presents nothing but limited anecdotal hearsay to suggest that there is a widespread practice" of FLSA violations."). Courts have even scrutinized boilerplate affidavits submitted by plaintiffs recognizing that plaintiffs will only recite self-serving factual allegations and omit activities that warrant

exemption under the FLSA. *See, e.g., Brown*, 252 F. Supp. 3d at 263 (S.D.N.Y. 2017) ("Plaintiffs' declarations describe their day-to-day responsibilities . . . in the vaguest of ways, and their factual allegations use self-serving legal terms of art. . . . Plaintiffs do not address whether they performed other duties that fall under the broad definition of 'management,' including the numerous activities enumerated in the FLSA regulations.").

Plaintiffs' reliance on several decisions for the proposition that courts have accepted declarations alone as a sufficient basis for conditional certification is misplaced and the cases are distinguishable. Pl. Mem. at 11. One case Plaintiffs rely on in support of this assertion, *Iriarte v. Redwood Deli and Catering, Inc.*, No. CV–07–5062, 2008 WL 2622929, at *1–3 (E.D.N.Y. June 30, 2008), has been distinguished by other decisions in the Eastern District. Notably, courts have distinguished *Iriarte* stating that "the *Iriarte* plaintiff proffered something more [than a single declaration]: the defendant's discovery responses conceding the employer's failure to keep records of the time worked by and wages paid to the plaintiff or any of its employees." *Jin Yun Zheng v. Good Fortune Supermarket Group (USA), Inc.*, No. 13-CV-60 ILG, 2013 WL 5132023, at *6 (E.D.N.Y. Sept. 12, 2013).

Additionally, other case law Plaintiffs cite to further undermines their assertion that declarations alone are sufficient to satisfy because in those cases the plaintiffs submitted additional affidavits from opt-in plaintiffs, which are not present in this case. *Cano v. Four M Food Corp.*, No. 08-CV-3005(JFB)(AKT), 2009 WL 5710143, at *6 (E.D.N.Y. Feb. 3, 2009).

Despite Plaintiffs' claims that self-serving declarations alone are sufficient to grant conditional certification, courts have required plaintiffs to set forth a stronger factual foundation than is present here. *Jin Yun Zheng*, 2013 WL 5132023, at *6. The self-serving nature of Plaintiffs' declarations are readily apparent due to their failure to address or dispute defenses

available to Interstate. Instead, Plaintiffs merely offer threadbare allegations regarding purported observations as to how many hours other loan officers worked. Galarza Decl. at ¶ 14. Moreover, Plaintiffs rely on hearsay to establish that other loan officers were paid in an allegedly similar manner. Niven Aff. at ¶ 15 ("To my knowledge, based upon what has been represented to me, these other loan officers who worked for Defendant were also paid on a commission-only basis."). Due to the self-serving nature of Plaintiffs' declarations, Plaintiffs' must set forth a stronger factual foundation to demonstrate Plaintiffs are similarly situated by a "modest factual showing."

## POINT II

### PLAINTIFFS' PROPOSED NOTICE IS DEFECTIVE

If the Court permits notice to be sent, the proposed Notice must be modified because it is defective and should not be approved. The proposed Notice should be stricken because: (1) the applicable time period is overly broad; (2) the group identified for receipt is overly broad; (3) the proposed Notice is likely to confuse recipients and substantially prejudice Defendants; and, (3) Plaintiffs request to post Notice in "conspicuous locations" and e-mail notice to potential opt-in plaintiffs is unnecessary. If Notice is required, Defendants' revised Notice should be approved.

### A.    The Notice Should Have A Two, Rather Than Three Year, Window

If the Court is inclined to grant conditional certification, the notice should have a two year window from the date notice is issued. The statute of limitations under the FLSA is two years, unless the employers' violation is willful, in which case it is three years from the date each individual files an opt-in form. 29 U.S.C. §255(a). A violation of the FLSA is deemed willful only where the "employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. *McLaughlin v. Richland Shoe Com*, 486 U.S. 128,133

(1998). Plaintiffs' allegations of willful conduct are specifically disputed by Interstate. Niven Aff. at ¶¶ 29-31. Moreover, whether Interstate acted willfully cannot be resolved at this stage because it is a factual issue to be resolved by the jury. *See Davis v. Lenox Hill Hosp.*, No. 03 CIV.3746 DLC, 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004) ("Whether the defendants knew or recklessly disregarded the fact that a failure to pay Elite Corps RNs overtime violated the FLSA—thereby extending the statute of limitations to three years—is a disputed issue of fact and must be decided by a jury."). Accordingly, notice should be limited to the FLSA two-year limitation period. *Id.*

Additionally, the time frame should be limited to two years from the date the notice is served upon the potential opt-in plaintiffs, not three years from when the Complaint was filed, as Plaintiffs contend. 29 U.S.C. § 256 states that in the case of a collective or class action under the FLSA, an individual's claim is considered to be commenced when "written consent is filed in the court in which the action was commenced. 29 U.S.C. § 256(b). Thus, a FLSA collective action suit begins for an individual plaintiff:

> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>
> (b) if such written consent was not so filed or if his name did not so appear-on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256. The case law, like the statute itself, requires named plaintiffs as well as others to submit a written consent to join in a collective action under the FLSA. The filing of the complaint itself is not sufficient to satisfy the tolling of the statute of limitations. *El v. Potter*, 2004 WL 2793166, (S.D.N.Y. 2004) ("[A]ll plaintiffs, including named plaintiffs, must file written consents in order to begin their [FLSA collective action lawsuits,] a suit does not begin

until a consent has been filed.") (emphasis added). Because both the statute and case law establish that the statute of limitations is only tolled upon opting in, the time frame should be limited to date back two years from when the Notice to the putative class is served, rather than from when the Complaint was filed, which was several months earlier.

### B.   The Group Identified To Receive The Opt-In Notice Is Overly Broad

Plaintiffs propose to send the Notice to "ALL LOAN OFFICERS EMPLOYED BY INTERSTATE." This group is overly broad and misleading. As discussed at length *supra*, Plaintiffs certainly are not similarly situated to "all loan officers" employed by Interstate. Loan officers operate out of different states and have different compensation structures. Most notably, some loan officers are exempt under the outside sales exemption of the FLSA, while other are not. Additionally, Plaintiffs have presented no methods to distinguish between loan officers exempt under the FLSA and non-exempt loan officers. Instead, Plaintiffs improperly seek to represent all loan officers.

### C.  Plaintiffs' Request To Post Notices In Conspicuous Locations And Via E-mail To Solicit Potential Opt-in Plaintiff's Is Inappropriate

Plaintiffs' request to both post and e-mail the Notice is unwarranted. Generally, first-class mailing is the preferred method to inform individuals of their ability to opt-in to a collective action. *See Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 91 (E.D.N.Y. 2007) ("Historically, first class mailing has been utilized because it provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential class members.") (citation omitted). Alternative forms of notification should not be used unless the plaintiff presents facts showing that such methods are necessary. Plaintiffs have made no such showing here. *See Gordon v. Kaleida Health*, No. 08-Civ.-378S,

2009 WL 3334784, at *11 (W.D.N.Y. Oct. 14, 2009); *Hintergerger v. Catholic Health Sys.*, No. 08-cv-380S, 2009 WL 3464134, at *13 (W.D.N.Y. Oct. 21, 2009).

Additionally, because an employer will be able to provide accurate mailing addresses for current employees, on-site posting is unnecessary. *See Gordon*, 2009 WL 3334784, at *11 ("[T]he only group that will be reached by posting are current employees, who have an interest in providing their employer with an up-to-date mailing address"); *Hintergerger*, 2009 WL 3464134, at *40-42; *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345, 2013 WL 5308004, at *17 (S.D.N.Y. Sept. 20, 2013) (posting notice is unnecessary when the notice is mailed to potential plaintiffs). Finally, courts recognize that notification by email can create risks of distortion or misleading notifications due to the ability of putative class members to modify the notice. Thus, absent evidence that the Notice will not reach the putative class through mailing, e-mail should not be permitted. *Gordon*, 2009 WL 3334784, at *11.

### D.   Plaintiffs' Proposed Notice Should Be Rejected As Misleading

#### 1.   A Description Of Interstate's Position Must Be Included

Fairness dictates that Interstate be permitted to describe their position and defenses. Since this is the first communication that potential opt-in plaintiffs receive about this lawsuit, it is critical that the Notice contain a balanced disclosure of both parties' positions. *See Belcher v. Shoeney's, Inc.*, 927 F.Supp. 249, 253 (M.D. Tenn. 1996) (authorizing notice that included statement of employer's affirmative defense); *Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 671 (E.D. Tenn. 2003) (same). Reference to Interstate's defense, such as that Plaintiffs were properly classified as exempt, should appear on the first page of the Notice to ensure that the recipients see this critical information.

Further, any reference made to this lawsuit seeking overtime compensation should clearly and unambiguously indicate that it applies only to hours actually worked over forty in a workweek. Potential opt-ins should be advised that there is no entitlement to overtime pay *unless* hours actually worked exceed 40 in a workweek (as opposed to sick time, vacation time, meal breaks or other non-work-time).

2.      The Notice Should Advise Opt-Ins Of Their Obligations As Plaintiffs

Any notice to potential opt-in plaintiffs *must* include potential consequences of participation in the litigation to ensure that a decision to opt-in is based on full and informed consent. Notice of the collective action should conspicuously include a statement that each opt-in plaintiff will be required to answer in written discovery and may be required to appear for deposition or trial in Court. *See Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 630 (D. Colo. 2002) (approving notice advising potential opt-in plaintiffs that if they opt-in, they may be asked to appear for deposition in Denver, respond to written discovery, and appear at trial in Denver).

Notice should also should advise potential opt-in plaintiffs that they may be liable to pay Defendant's costs if Interstate prevails. *See Robbins-Pagel v. Puckett*, No. 6:05CV1582 ORL31DAB, 2006 WL 3393706, at *3 (M.D. Fla. Nov. 22, 2006) (holding that the plaintiff's proposed notice was inadequate because it failed to inform plaintiff that, if they did opt-in and were unsuccessful on the merits of their claim, they may be responsible for the defendants' costs).

Finally, Notice should advise the opt-in plaintiffs of their obligation to preserve all records relating to their employment with Interstate; records relating to W-2s, 1099's, tax returns, and expenses.

## CONCLUSION

Based on the forgoing, it is respectfully requested that Plaintiffs' Motion to Proceed as a

Collective Action and to Facilitate Notice Under 29 U.S.C. Section 216(b) be denied.

Dated: Ronkonkoma, New York
March 16, 2018

CAMPOLO, MIDDLETON
& McCORMICK, LLP

By:  _____

Jeffrey X. Basso, Esq.
*Attorneys for Defendants*
4175 Veterans Memorial Highway
Suite 400
Ronkonkoma, New York 11779
(631) 738-9100
