UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JEFFREY AGONATH, JAMES ALLEN,
BRIAN DALEY, KEVIN ROGERS, and
MICHAEL GALARZA, *Individually, and*     **MEMORANDUM**
*on Behalf of All Others Similarly Situated,*    **AND ORDER**

                        Plaintiffs,    17-cv-5267 (JS)(SIL)

   -against-

INTERSTATE HOME LOANS CENTER,
INC., TERENCE CULLEN, ALEX NIVEN,
KENNETH TUMSUDEN, JEANNE
WICKES, and ELLEN ZUCKERMAN,

                        Defendants.
------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

       Plaintiffs Jeffery Agonath ("Agonath"), James Allen ("Allen"), Brian Daley ("Daley"), and Kevin Rogers ("Rogers," and collectively the "Illinois Plaintiffs"), along with Michael Galarza ("Galarza," and together with the Illinois Plaintiffs, "Plaintiffs") commenced this action on behalf of themselves and others similarly situated seeking, *inter alia*, unpaid overtime compensation from Defendants Interstate Home Loans Center, Inc. ("Interstate"), Terence Cullen, Alex Niven, Kenneth Tumsuden, Jeanne Wickes, and Ellen Zuckerman (together, the "Individual Defendants," and collectively with Interstate, "Defendants"), pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq*. and various state laws. *See* Complaint ("Compl."), Docket Entry ("DE") [1].

       Presently before the Court, on referral from the Honorable Joanna Seybert for decision, is Plaintiffs' motion to proceed as a collective action and to facilitate notice

under 29 U.S.C. § 216(b). *See* DE [26] ("Plaintiffs' Motion"); DE [26-7], Proposed Notice of Collective Action Lawsuit with Opportunity to Join (the "Proposed Notice"); DE [26-13], Proposed Revised Notice of Collective Action Lawsuit with Opportunity to Join (the "Revised Notice"); *see also* October 11, 2018 Electronic Order [Referring Motion]. Defendants oppose Plaintiffs' Motion. *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Proceed as a Collective Action and to Facilitate Notice Under 29 U.S.C. Section 216(b) ("Defs.' Opp."), DE [26-8]. For the reasons set forth herein, Plaintiffs' Motion is granted in part and denied in part as detailed below.

**I. Background**

The following facts are taken from the Complaint and declarations submitted in support of the instant motion, and are accepted as true for the purposes of the motion.[1]

Interstate is a New York corporation in the business of mortgage lending with locations throughout the United States, including corporate headquarters in Melville, NY. *See* Compl. ¶ 10; *see also* Defs.' Opp. at 2. The Individual Defendants are the owners and officers of Interstate. *See* Compl. ¶¶ 11-15. Plaintiffs, residents of New York and Illinois, were formerly employed by Interstate as loan officers tasked with originating mortgages. *See id.* ¶¶ 5-9, 18, 29, 39, 47, 55. Throughout the course of their employment, Plaintiffs regularly worked more than 40 hours per week over the

---

[1] Plaintiffs each submitted a declaration in support of the instant motion. *See* Declaration of Jeffery Agonath ("Agonath Decl."), DE [26-1]; Declaration of James Allen ("Allen Decl."), DE [26-2]; Declaration of Brian Daley ("Daley Decl."), DE [26-3]; Declaration of Kevin Rogers ("Rogers Decl."), DE [26-4]; Declaration of Michael Galarza ("Galarza Decl."), DE [26-5] (collectively, "Plfs.' Decls.").

course of five to seven days. *See id.* ¶¶ 22, 25, 33, 57, 41, 43, 49, 51, 59; *see also* Plfs.' Decls. Galarza worked primarily in Interstate's Melville office in addition to working from a home office, whereas the Illinois Plaintiffs performed their primary duties from a single home office in Illinois. *See* Compl. ¶¶ 20, 21, 31. According to Plaintiffs, Defendants improperly classified them and other loan officers as exempt from, *inter alia*, FLSA overtime requirements. *See id.* ¶ 62. Thus, Defendants failed to maintain time records and did not pay Plaintiffs overtime compensation despite being aware that their employees were regularly working in excess of 40 hours per week. *See id.* ¶¶ 63-66. Other loan officers employed by Interstate were and continue to face similar alleged improper overtime deprivations. *See id.* ¶ 67; *see also* Galarza Decl. ¶ 14 (naming additional loan officers subject to Defendants' overtime policy).

Based on the above, Plaintiffs initiated this lawsuit on September 7, 2017, seeking to recover, *inter alia*, damages pursuant to the FLSA, New York and Illinois law. *See generally* Compl. Defendants Answered the Complaint on January 8, 2018. *See* DE [20]. Discovery is ongoing. *See* DE [29]. Plaintiffs filed the instant motion for conditional FLSA collective action certification on April 6, 2018, *see* DE [26], and Judge Seybert referred the motion to this Court for decision. *See* October 11, 2018 Electronic Order. Plaintiffs' Motion requests an Order: (i) conditionally certifying this case as an FLSA collective action encompassing all current and former loan officers employed by Defendants from three years prior to the initiation of this suit through the present; (ii) directing Defendants to produce a computer-readable data file containing contact and employment information for the putative class; and (iii)

authorizing dissemination of a notice of pendency to potential opt-in plaintiffs via first-class mail and email, and by posting the notice conspicuously throughout Interstate's nationwide locations. *See* Plaintiffs' Memorandum of Law in Support of Their Motion to Proceed as a Collective Action and to Facilitate Notice Under 29 U.S.C. Section 216(b) ("Plfs.' Mem."), DE [26], at 23. Defendants oppose conditional certification and object to portions of the Proposed Notice along with Plaintiffs' proposal for distribution of the notice. *See generally* Defs.' Opp.

## II. Discussion

Pursuant to the FLSA, employees must be compensated "at a rate not less than one and one-half times the regular rate at which [they are] employed" for every hour worked in excess of 40 in a given work week. 29 U.S.C. § 207(a)(1). Section 216(b) of the FLSA provides that:

> An action … may be maintained against any employer ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). "[D]istrict courts 'have discretion, in appropriate cases, to … facilitat[e] notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169, 110 S. Ct. 482 (1989)).

Consistent with this discretion, and as detailed below, the Court: (i) conditionally certifies this case as an FLSA collective action; (ii) authorizes the

4

dissemination of notice of the litigation, subject to the conditions set forth herein; and (iii) orders Defendants to produce contact information and dates of employment for potential opt-in plaintiffs.

### A. <u>Conditional Certification</u>

Courts in the Second Circuit apply a two-step analysis to determine whether a collective action under Section 216(b) of the FLSA should be certified. *See Myers*, 624 F.3d at 554. First, the Court evaluates whether the proposed class members are "similarly situated" to the named plaintiffs. *See Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001). If the Court finds that the putative class is sufficiently similarly situated, the action will be conditionally certified and each class member may then consent in writing to "opt-in" to the litigation. *Id.* (citing 29 U.S.C. § 216(b)). "[T]he key question for the similarly situated inquiry is not whether plaintiff's job duties are identical to other potential opt-in plaintiffs, but rather, whether the proposed plaintiffs are similarly situated … with respect to their allegations that the law has been violated." *Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 656 (S.D.N.Y. 2017) (internal quotations and citations omitted). The second step generally occurs following completion of discovery and requires examination of the evidentiary record to ascertain whether the opt-in plaintiffs are, in fact, similarly situated. *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009). The present motion concerns only the first step of the certification process – whether the proposed class members are similarly situated such that conditional certification is appropriate.

At the conditional certification stage, "the evidentiary standard is lenient." *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 58 (E.D.N.Y. 2011); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("The burden for demonstrating that potential plaintiffs are similarly situated is very low at the notice stage") (internal quotation and citation omitted). Plaintiffs seeking conditional certification "need only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (internal quotation and citation omitted). "This low burden is consistent with the broad remedial purpose of the FLSA." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 661 (S.D.N.Y. 2013) (internal quotation and citation omitted). At this stage, "the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations." *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010) (quoting *Francis v. A & E Stores, Inc.*, No. 06-cv-1638, 2008 WL 2588851, at *2 (S.D.N.Y. June 26, 2008), *report and recommendation adopted as modified*, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008)); *see also Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008) ("The standard in this circuit is clear; the merits of plaintiffs' claim are not at issue in a motion for conditional certification"). Thus, when "plaintiffs attest that they regularly worked in excess of [] 40 hours per week and worked evenings, early mornings, and weekends without being properly paid…. [s]uch attestations … are

6

sufficient for the purposes of [conditional certification]." *Bifulco*, 262 F.R.D. at 214 (internal citation omitted).

To be entitled to conditional certification, a movant is not required to prove an actual FLSA violation, "but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (quoting *Wraga v. Marble Lite, Inc.*, No. 05-cv-5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006)); *see also Sexton v. Franklin First Fin., Ltd.*, No. 08-cv-4950, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) ("'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required") (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)). "Courts will certify broad classes where there is some showing that all members of the putative class performed the same duties ... or that the employer had uniform company-wide employment practices." *Vasquez v. Vitamin Shoppe Indus.*, Inc., No. 10-cv-8820, 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011) (internal citation omitted). The determination that potential opt-in plaintiffs are similarly situated is typically based on the pleadings and declarations submitted in support of the motion. *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 452 (E.D.N.Y. 2014) ("courts in the Second Circuit routinely grant conditional certification for overtime claims based on the statements of the named plaintiff(s) and other supporting affidavits").

Here, Plaintiffs have satisfied their burden of demonstrating that they and the potential collective action members – other loan officers subject to wage violations –

7

were together victims of a common compensation policy that violated the FLSA. The Complaint alleges that Defendants systematically failed to pay Plaintiffs and other Interstate loan officers overtime wages provided for under federal law. *See* Compl. ¶¶ 62-65. Those allegations are supported by Plaintiffs' Declarations, which describe similar unlawful employment practices. *See, e.g.*, Agonath Decl. ¶ 9 ("[loan officers] were encouraged to work long hours"); *id.* ¶ 11 ("Interstate used no timekeeping system to track and record the hours worked by ... loan officers"); *id.* ¶ 14 ("Interstate never paid ... loan officers for the overtime hours ... worked"); *id.* ¶ 15 ("All loan officers employed by Interstate ... were subject to the same policies and practices, and had the same duties");[2] *see also* Galarza Decl. ¶ 8 ("During my employment, Defendants did not track or otherwise record the number of hours that I worked each day and each week of my employment"); *id.* ¶ 13 ("I worked with at least eight to ten loan officers who also originated mortgage loans for Interstate. To my knowledge, these loan offices were subjected to the same payroll and timekeeping practices and policies of Defendants as me. All other loan officers had the same job duties and responsibilities..."). Thus, Galarza and the Illinois Plaintiffs attest that they, and the putative class, were all subject to the same payroll policies and practices.

The Court is unpersuaded by Defendants' argument that conditional certification is inappropriate because, *inter alia*, some of Interstate's employees "are exempt from overtime wages under the FLSA, thus requiring this Court to engage in highly individualized and fact intensive inquiries [into each Plaintiff]" and since

---

[2] The Declarations of the other Illinois Plaintiffs attest to virtually identical policies and practices. *See generally* Plfs.' Declarations.

Defendants' loan officers are "disparately situated depending on their classifications and job duties" despite sharing the same job title. *See* Defs.' Opp. at 1-15; *see also* Affidavit of Alexander Niven ("Niven Aff."), DE [26-9], ¶ 5. Specifically, Defendants contend that Plaintiffs are not similarly situated because the additional loan officers named in the Galarza Declaration worked in Interstate's Melville office, whereas Plaintiffs are outside salespeople exempt from overtime wages under the FLSA. *See* Defs.' Opp. at 3-4; Niven Aff. ¶¶ 6-7. Further, Defendants claim that the Illinois Plaintiffs' out-of-state work at an unsanctioned office rendered them outside the scope of Interstate's control. *See* Defs.' Opp. at 5; Niven Aff. ¶ 10.

As discussed above, Plaintiffs have sufficiently alleged and attested to a common compensation policy whereby Interstate's loan officers are uniformly deprived of overtime wages. Moreover, Plaintiffs argue that Defendants' classification of loan officers as exempt was impermissible. *See* Compl. ¶ 62 ("Defendants improperly classified Named Plaintiffs and other loan officers working for them as exempt from the overtime requirements of the FLSA …"). Defendants' arguments concerning exemption status and disparate employment conditions present factual disputes that would require the premature resolution of substantive issues. *See Summa*, 715 F. Supp. 2d 378, 390 ("the court rejects Defendant's objection that conditional certification was inappropriate because the class … required individualized factual inquiries to determine whether or not they were exempt from the FLSA"); *Sexton*, 2009 WL 1706535, at *7 (a "motion for conditional certification is not the proper forum to litigate the merits of plaintiff's claims"); *see also Lynch*, 491

F. Supp. 2d at 368 ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations…. Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated") (internal citations omitted). Accordingly, Defendants' arguments are better suited for summary judgment or decertification following discovery and are therefore rejected. *See Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 479 (S.D.N.Y. 2016) ("In the second stage, which occurs after discovery …. a defendant can move to decertify if the record reveals that the claimants are not similarly situated") (citing *Myers*, 624 F.3d at 55); *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 565 (S.D.N.Y. 2012) ("The Defendant will have an opportunity to argue that individual inquiries predominate over common issues, based upon the discovery, at the second phase"); *see also Bijoux v. Amerigroup New York, LLC*, No. 14-cv-3891, 2015 WL 4505835, at *10 (E.D.N.Y. July 23, 2015), *report and recommendation adopted*, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015) ("the type of person-by-person fact-intensive inquiry sought by Defendants is premature at the conditional certification stage and has been specifically rejected by courts within this circuit") (internal brackets quotations and citations omitted).[3]

---

[3] Notably, much of the authority cited by Defendants throughout their opposition is from outside the Second Circuit. For example, the two principal cases Defendants rely in in opposing conditional certification are from the Southern District of Indiana and the Eastern District of Michigan. *See, e.g.*, Defs.' Opp. at 12; *Clausman v. Nortel Networks, Inc.*, No. IP02-0400, 2003 WL 21314065 (S.D. Ind. May 1, 2003); *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545 (E.D. Mich. 2004). The Court declines to follow those cases in light of the well-established principles in this circuit.

Moreover, Defendants' contention that Plaintiffs' "boilerplate affidavits fail[] to satisfy their [evidentiary] burden" is without merit. *See* Defs.' Opp. at 14-16. As discussed above, the low evidentiary burden for conditional certification merely requires Plaintiffs to set forth a factual nexus between their allegations and an alleged policy affecting the putative class. Here, the Declarations of the Illinois Plaintiffs and Galarza assert that Interstate had a uniform policy of withholding overtime compensation from its employees and support those allegations with individualized testimony as to their personal compensation experiences. *See generally* Plfs.' Decls. Accordingly, Plaintiffs have satisfied the lenient standard applicable at this stage, and the Court conditionally certifies this matter as an FLSA collective action encompassing all current and former loan officers employed by Defendants during the time window set forth below.

### B. Notice Period

The Court must next determine the appropriate timeframe applicable to the class. Plaintiffs seek permission to include as potential collective action plaintiffs all loan officers who worked for Defendants dating back three years from the filing of the Complaint (*i.e.* from September 7, 2014 through the present). *See* Plfs.' Mem. at 22. Defendants contend that the notice period should be based upon when notice is served upon potential plaintiffs as opposed to when the Complaint was filed, and that only a two-year window is appropriate. *See* Defs.' Opp. at 17. As discussed below, the Court concludes the neither party's position is appropriate and instead directs that

11

notice be given to potential opt-in plaintiffs dating back three years from the filing of Plaintiffs' Motion (*i.e.*, from April 6, 2015 through the present).

The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years. See 29 U.S.C. § 255(a). "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Jie Zhang v. Wen Mei, Inc.*, 14-cv-1647, 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015) (citing *Summa*, 715 F. Supp. 2d at 388); *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 268 n.2 (E.D.N.Y. 2005) (finding allegation of willful violation justified notice based on a three-year statute of limitations period). Further, "the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit." *Garriga v. Blonder Builders Inc.*, No. 17-cv-0497, 2018 WL 4861394, at *10 (E.D.N.Y. Sept. 28, 2018) (citing 29 U.S.C. § 256(b)). The Court, however, "may toll the limitations period to avoid inequitable circumstances" under the doctrine of equitable tolling. *See id.* (internal quotation and citations omitted). One such circumstance where equitable tolling is appropriate is during the period in which the motion for conditional certification is pending. *See Yahraes v. Rest. Assocs. Events Corp.*, No. 10-cv-935, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) ("The delay caused by the time for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine") (internal quotation bracket and citations omitted); *McGlone v. Contract*

12

*Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) ("While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings"); *see also Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (applying equitable tolling as of the date of the filing of a conditional certification motion that took seven months to decide).

Here, the Complaint alleges that Defendants willfully violated the FLSA. *See* Compl. ¶¶ 69, 84. Moreover, Plaintiffs' assertions of willfulness are supported by Galarza's testimony. *See* Galarza Decl. ¶ 17 ("Despite Defendants' knowledge of the number of overtime hours that I and the other loan officers worked … Defendants never paid [us] overtime compensation"). Defendants argue that a two-year notice period is appropriate because Interstate disputes that any wrongdoing was willful, which gives rise to a factual dispute. *See* Defs.' Opp. at 16-17; *see also* Niven Aff. At this conditional certification stage, however, Defendants' denial is insufficient to overcome Plaintiffs' allegations of willfulness. *See Alvarez v. IBM Restaurants Inc.*, 839 F. Supp. 2d 580, 587 (E.D.N.Y. 2012) ("The Plaintiffs have alleged willfulness in their Complaint ... and the Defendants deny these allegations. Courts in this circuit have generally held that where willfulness is in dispute, a three-year statute of limitations applies at the conditional certification stage"). Accordingly, Plaintiffs have sufficiently alleged willful conduct such that a three-year statute of limitations is appropriate with respect to the conditional class.

The Court further concludes *sua sponte* that the three-year statute of limitations should be tolled for the period between the filing of the Plaintiffs' Motion and the date of this Memorandum and Order. The record is clear that Plaintiffs diligently pursued conditional certification. Specifically, Plaintiffs' moving brief is dated January 31, 2018, less than one month after Defendants filed their Answer and more than one year prior to the instant decision. *See* DEs [20], [26]. Absent tolling of the limitations period, a substantial number of class members may now be time-barred through no fault of counsel or the class representatives. Accordingly, the Court concludes it is equitable to toll the statute of limitations while Plaintiffs' Motion was pending, and directs notice to be provided to all present and former loan officers employed by Interstate from April 6, 2015 through the present.[4]

### C. **Proposed Notice**

#### i. Content of the Notice

Next, Plaintiffs seek leave to disseminate the Proposed Notice to all loan officers employed by Interstate between September 7, 2014 and the present. *See* Plfs.' Mem. at 19-20; Proposed Notice. Defendants object to the Proposed Notice on the grounds that it: (i) too broadly defines the class as "all loan officers" given that some loan officers are exempt from FLSA overtime requirements and subject to different a compensation structure; (ii) fails to describe their defenses in details; (iii) omits reference that the overtime claim only applies to hours worked in excess of 40 in a given week; and (iv) does not adequately inform the putative class of their obligations,

---

[4] The Court notes that any particularized challenge to a given Plaintiff's statute of limitations will be entertained at the appropriate juncture.

including the requirement to engage in discovery and the possibility of bearing Defendants' costs if there is no recovery. *See* Defs.' Opp. at 18-20. On reply, Plaintiffs submitted the Revised Notice, which: (i) indicates Defendants' denial of any wrongdoing; (ii) mentions repeatedly that the overtime claims concern hours worked in excess of 40 in a given week; (iii) informs opt-in plaintiffs that they may be liable for costs if there is no recovery; (iv) indicates that class members may have to give written or oral testimony; and (v) instructs opt-in plaintiffs to preserve employment records. *See* Revised Notice.

Neither the FLSA nor any court has expressly outlined what form court-authorized notice should take or what provisions the notice should contain. S*ee Moore*, 276 F.R.D. at 58 (citing *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)). It is well-settled, however, that "[t]he form of a court-authorized notice and provisions contained in it are left to the broad discretion of the trial court." *Sobczak*, 540 F. Supp. at 364; *Hernandez v. Immortal Rise, Inc.*, No. 11-cv-4360, 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) ("courts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions [of the FLSA] and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate") (internal quotation and citation omitted).

Consistent with this discretion, the Court concludes that the Revised Notice should be modified to: (i) reflect the notice period described by the Court above (*i.e.*,

September 7, 2014 should be replaced with April 6, 2015 throughout); (ii) remove the reference to opt-in plaintiffs potentially bearing Defendants' costs; and (iii) describe Defendants' position in greater detail. With respect to Defendants' principal objection – that the identified class is too broad – the Court rejects this argument for the same reason it conditionally certifies the class. Specifically, Defendants' claim that the putative class encompasses loan officers that are exempt from FLSA overtime requirements is premature at the conditional certification stage in light of Plaintiffs' allegations and attestations that "all loan officers … were subject to the same policies and practices." *See, e.g.*, Agonath Decl. ¶ 15; *see also* Compl. ¶ 68 ("Other loan officers … are subject to the same practices and policies that deprive them of overtime wages").

Further, the Court disagrees that the notice should mention that opt-in plaintiffs might be liable for Defendants' costs if there is no recovery. Although some courts have approved language to this effect, *see, e.g.*, *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 110 (S.D.N.Y. 2003), many courts in this District have reached the opposite conclusion. *See Guzman v. VLM, Inc.*, No. 07-cv-1126, 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007) ("Given the remote possibility that such costs for absent class members would be other than *de minimis* ... such language is inappropriate"); *see also Dilonez v. Fox Linen Serv. Inc.*, 35 F. Supp. 3d 247, 256 (E.D.N.Y. 2014); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 95 (E.D.N.Y. 2010). Accordingly, in light of the FLSA's overarching

remedial purpose, the Court will not authorize language stating that opt-in plaintiffs may be required to pay costs in the event they do not prevail.

With respect to detailing Defendants' position, an issue that Plaintiffs do not dispute but purport to resolve with the Revised Notice, the Court agrees that it is appropriate to further revise the language to indicate Defendants' contention that Plaintiffs are exempt from FLSA overtime requirements. Although the Court will not resolve this substantive dispute at the conditional certification stage, this information will give individuals considering joining the suit an opportunity to consider whether it is worthwhile to participate. Accordingly, the Court directs that the last paragraph of Section II of the Revised Notice include language indicating that Defendants' denial of wrongdoing includes contending that Interstate's loan officers are exempt due to their classification as outside salespeople.

The Court is satisfied that the Revised Notice adequately alleviates Defendants' remaining concerns. Additionally, the Revised Notice: (i) describes the nature of the lawsuit; (ii) informs the putative class that the Court does not endorse the merits of the action; (iii) apprises opt-in plaintiffs that they will be bound by the outcome of the action if they join, and that they will not be affected if they choose not to participate; (iv) advises the putative class that Defendants cannot retaliate against them for joining the suit; and (iv) notifies recipients that they have the option to retain independent counsel. Accordingly, the Court approves dissemination of the Revised Notice once it reflects the changes indicated above. To that end, once Plaintiffs have edited the Revised Notice in accordance with the Court's directives,

17

they should serve a draft on Defendants on or before March 20, 2019. Defendants must serve any objections, or give their consent, on or before March 29, 2019. After the revised notice is complete, the parties should file a joint motion for approval of the notice with the Court on or before April 10, 2019. That motion should contain a proposed opt-in form.

> ii. Distribution of the Notice

Finally, the Court authorizes Plaintiffs to circulate the notice, once approved, via first-class mail and email. Further, the Court directs Defendants to conspicuously post the notice and opt-in forms at their company office locations, and to produce contact information and dates of employment for each of the potential class members. Plaintiffs seek to distribute notice via first class mail, email correspondence, and by posting the notice at Interstate's office locations. *See* Plfs.' Mem. at 20-21. Defendants object to email distribution and in-office posting, contending that regular mail alone is sufficient. *See* Defs.' Opp. at 18-19.

The Court first concludes that email circulation is reasonable. *See Martin v. Sprint/united Mgmt. Co.*, No. 15-cv-5237, 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016) ("Courts in this Circuit routinely approve email distribution of notice and consent forms in FLSA cases") (collecting cases); *Pippins v. KPMG LLP*, No. 11-cv-0377, 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012) ("given the reality of communications today … email notice in addition to notice by first class mail is entirely appropriate") (internal citation omitted); *see also Cabrera v. Stephens*, No. 16-cv-3234, 2017 WL 4326511, at *11 (E.D.N.Y. Sept. 28, 2017) (permitting email

dissemination of the notice of pendency). Moreover, the Court concludes that the final notice of pendency along with consent forms should be posted at each of Interstate's office locations. *See Cabrera*, 2017 WL 4326511, at *8 ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail") (internal quotations and citations omitted). Defendants do not proffer an explanation as to how such a posting would be unduly burdensome, and instead merely contend it is unnecessary. The Court, however, will not require Defendants to post notices in any home offices out of which their employees operate. Accordingly, the Court authorizes the notice of pendency to be distributed by first-class mail and email, and directs Defendants to conspicuously post the notice and opt-in forms in their company offices.

To that end, Defendants are directed to provide Plaintiffs with a computer-readable data file containing the names, last known mailing addresses, last known telephone numbers, last known email addresses, and dates of employment of potential opt-in plaintiffs, consistent with the class described herein, on or before April 12, 2019. *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-cv-1491, 2015 WL 4603117, at *14 (E.D.N.Y. July 29, 2015) ("Disclosure of the names, addresses, telephone numbers, and email addresses of putative class members is commonplace in this district because such information is essential to identifying and notifying potential opt-in plaintiffs"); *Ack v. Manhattan Beer Distributors, Inc.*, No. 11-cv-5582, 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012) ("Courts routinely order discovery

of names, addresses, and telephone numbers in FLSA actions"). All notices must be circulated within two weeks of the Court's approval of the final version.

## III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' Motion as follows:

1) this action is conditionally certified as a collective action, with the potential class including any and all of Defendants' current and former loan officers who were employed from April 6, 2015 through the present;

2) Defendants are directed to produce a computer-readable data file containing the names, last known mailing addresses, last known telephone numbers, last known email addresses, and dates of employment of all potential class members on or before April 12, 2019;

3) Plaintiffs are authorized to disseminate the final approved notice and opt-in forms via first class mail and email within two weeks of the Court's approval of the final version, and Defendants are directed to conspicuously post the approved notice and opt-in forms at Interstate's office locations; and

4) the statute of limitations is tolled from the time Plaintiffs' Motion was filed through the date of issuance of this Memorandum and Order.

Dated:  Central Islip, New York
        March 6, 2019              /s/ Steven I. Locke
                                   STEVEN I. LOCKE
                                   United States Magistrate Judge